# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| CRUISE K. SMITH, | ) | |
| ID # 220920, | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 3:20-CV-1139-D-BH |
| | ) | |
| DIRECTOR, Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
| Respondent. | ) | Referred to U.S. Magistrate Judge[1] |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings and applicable law, the *Petition for a Writ of Habeas Corpus by a Person in State Custody*, received on April 22, 2020 (doc. 1), should be **DENIED** with prejudice.

## I.    BACKGROUND

Cruise K. Smith (Petitioner), an inmate currently incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2018 conviction and 30-year sentence in the 203rd Judicial District Court of Dallas County, Texas.[2]  (*See* doc. 1 at 2.)[3]  The respondent is the Director of TDCJ-CID (Respondent).  (*See id.* at 1.)

### A.    State Court Proceedings

Petitioner was charged by indictment with aggravated robbery with a deadly weapon, enhanced with a prior felony conviction for burglary of a habitation. (*See* doc. 18-3 at 4.)  He

---

[1] By *Special Order No. 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.

[2] The Eastern District of Texas, where the petition was originally filed, transferred it to this Court.  (*See* doc. 3.)

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

pleaded guilty, and on August 24, 2018, the trial court sentenced him to thirty years in prison. (*See id.* at 7-13.) Petitioner did not appeal his conviction. (doc. 1 at 3.)

Petitioner filed his first state habeas application on May 6, 2019. (*See* doc. 18-3 at 32.) While that application was still pending in the trial court, Petitioner filed another state habeas application in September 2019. (*See* doc. 18-2 at 15.) On November 27, 2019, the Texas Court of Criminal Appeals denied the May application without written order based on the findings of the trial court. (doc. 18-4); *Ex parte Smith*, No. WR-90,617-02 (Tex. Crim. App. Nov. 27, 2019). The Texas Court of Criminal Appeals dismissed the September application without written order the same day. (*See* doc. 18-1); *Ex parte Smith*, No. WR-90,617-01 (Tex. Crim. App. Nov. 27, 2019).

**B.    Substantive Claims**

The § 2254 petition asserts the following grounds for relief:

(1) The trial court denied Petitioner's right to appeal and right to appellate counsel;

(2) Petitioner's trial counsel was ineffective for not preparing an appeal;

(3) Petitioner's trial counsel was ineffective for failing to seek an acquittal;

(4) The prosecution suppressed evidence; and

(5) The trial court denied Petitioner's right to appellate counsel for the purposes of filing a motion for a new trial.

(doc. 1 at 6-8.) Respondent filed a response on December 16, 2020. (doc. 17.) Petitioner did not file a reply.

## II.    APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1214, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). As for the "unreasonable application" standard, a writ may issue "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly

3

established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

"As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that

the state court's ruling on the claim being presented in federal court was so lacking in justification

that there was an error well understood and comprehended in existing law beyond any possibility

for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  A petitioner must

show that "there was no reasonable basis for the state court to deny relief." *Id.* at 98.

A federal district court must be deferential to state court findings supported by the record.

*See Pondexter v. Dretke*, 346 F.3d 142,149-52 (5th Cir. 2003).  The AEDPA has "modified a

federal habeas court's role in reviewing state prisoner applications in order to prevent federal

habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible

under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002) (citing *Williams*, 529 U.S. at 403-04).  A state

application that is denied without written order by the Texas Court of Criminal Appeals is an

adjudication on the merits.  *See Singleton v. Johnson*, 178 F. 3d 381, 384 (5th Cir. 1999); *Ex parte

Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (en banc) (holding that a denial signifies an

adjudication on the merits while a "dismissal" means the claim was declined on grounds other than

the merits).

Section 2254(d)(2) concerns questions of fact.  *See Moore v. Johnson*, 225 F.3d 495, 501

(5th Cir. 2000).  Under § 2254(d)(2), federal courts "give deference to the state court's findings

unless they were 'based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000).

The resolution of factual issues by the state court is presumptively correct and will not be disturbed

unless the state prisoner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C.

§ 2254(e)(1).

### III. DENIAL OF APPELLATE RIGHTS

In his first ground for relief, Petitioner claims that the trial court denied his right to appeal and to have court-appointed appellate counsel for that appeal. (doc. 1 at 6.) Similarly, in his fifth ground for relief, Petitioner claims that the trial court denied his right to "appell[ate] counsel" to file a motion for a new trial raising a "no evidence" argument. (*See id.* at 8.) He appears to allege that he was not informed of his right to appeal and that the trial court ignored his request to appeal and refused to appoint appellate counsel even though he was indigent. (doc. 1 at 6.); *see also* (doc. 18-3 at 22-23, 30) (state habeas application with further factual allegations).

Texas provides criminal defendants a right to appeal by statute, and when a state affords such a right, to ensure that it is more than a "meaningless ritual," it must supply an indigent appellant in a criminal case with an attorney. *See Evitts v. Lucey*, 469 U.S. 387, 394 (1985); TEX. CODE CRIM. PROC. art. 44.02 (affording right to appeal most criminal judgments).

In the state habeas proceedings, Petitioner's trial counsel submitted an affidavit addressing Petitioner's claims, including the allegations that Petitioner was denied appellate counsel and the right to appeal. He explained:

> On February 19, 2018, I was appointed to represent [Petitioner]. He was charged with 1 count of Aggravated Robbery. The offense was caught on video which was viewed by [Petitioner] before he made the decision concerning his case. [Petitioner] went open to the court on the issue of punishment. This is called an open plea where a defendant pleads guilty to the offense as charged and goes to the Court for punishment. [Petitioner] pled guilty to the Court on August 24, 2018 and was sentenced. [Petitioner] not only did this voluntarily, he was admonished in open court and on the record as to the consequences of an open guilty plea the week before on August 17, 2018. After [Petitioner] was sentenced, we spoke in the holdover cell where I expressed sympathy and, although I don't remember the exact conversation, I would have told him that he could appeal his case. I also would have told him that I do not do appellate work but that the Court would appoint him a lawyer to do his appeal. This is what I tell every client who gets sentenced to prison time. This I know I did because I do it with every client.

5

Response to Ground One[4]: I am not clear about [Petitioner's] complaint but [Petitioner] did not plead not guilty as he states in his complaint. [Petitioner] plead guilty to the court after being admonished as to the consequences of pleading guilty to the charge. In addition, I would have told him that he had the right to appeal and that the court would appoint an attorney if he could not afford to hire one.

Response to Ground Two: I deny this complaint based on the fact that I do not do appellate work and I am positive that I would have told that to [Petitioner].

Response to Ground Three: I did not request an acquittal because [Petitioner] did not tell me to do so. In addition, to be very clear, [Petitioner's] right to plead not guilty and seek a jury trial was explained to him by me multiple times and by the Court on the record on August 17, 2018. [Petitioner] is correct that the victim could not identify him because the victim was struck unconscious without warning. The incident and [Petitioner], however, were caught on video.

Response to Ground Four: This is very similar to the previous complaint and as such, I restate my previous response.

Response to Ground Five: [Petitioner], after being sentenced, had his rights explained to him by me. His options were limited due to his decision to plead guilty to the indictment to the Judge of the Court. In conclusion, I do not remember the exact conversation that I had with [Petitioner] after he was sentenced, but having practiced criminal law for 30 years, I know I explained his rights to him because I do it with every client on every case where the client is sentenced to prison.

(doc. 18-2 at 61-62.)

In recommending that this claim—and the overlapping ineffective assistance of counsel addressed below—be rejected, the habeas trial court made the following findings, which the Texas Court of Criminal Appeals adopted:

1. Applicant alleges that he told trial counsel that he desired to appeal his conviction but no notice of appeal was ever filed.

2. Applicant provides no details concerning how or when he advised anyone that he desired to appeal.

3. Trial counsel, JR Cook, has submitted an affidavit stating that he informed Applicant of his appellate rights. (Attached as Exhibit A).

4. The Court finds that Mr. Cook's affidavit is credible and worthy of belief.

---

[4] Petitioner's claims in the May application were presented in the same order that they are presented in his federal application. (*See* doc. 18-3 at 22-31.)

5. The Court finds that Applicant signed the Trial Court's Certification of his Right to Appeal.

6. The Court finds that Applicant was fully advised of his appellate rights.

7. The Court finds that Applicant has not shown by a preponderance of evidence that he ever communicated a desire to appeal to either his trial counsel or the court.

(doc. 18-2 at 59.)

These factual findings and credibility determinations are presumed to be correct and can only be rebutted through clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *see also Mumphrey v. Director, TDCJ-CID*, No. 6:18cv523, 2020 WL 7000068, at *7 (E.D. Tex. Sept. 16, 2020), *rec. accepted* 2020 WL 7000066 (E.D. Tex. Oct. 5, 2020). Petitioner fails to point to any evidence to rebut the findings that he was "fully advised of his appellate rights" and that he did not advise or communicate to anyone, including his counsel or the trial court, that he wished to appeal. Based on those findings, the trial court did not preclude Petitioner from appealing or otherwise interfere with his appellate rights. Claims 1 and 5 are without merit, and Petitioner has failed to show that the state court's rejection of them was unreasonable. Claims 1 and 5 should be denied.

## IV.    INEFFECTIVE ASSISTANCE OF COUNSEL.

In his second and third grounds, Petitioner claims that his trial counsel was ineffective.

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Evitts*, 469 U.S. at 396. To successfully state a claim of ineffective assistance of counsel,

the petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 697. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see Williams*, 529 U.S. at 393 n.17 (recognizing that the inquiry focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair"). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

Further, federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is "doubly deferential" because the court takes a highly deferential look at counsel's performance through the deferential lens of § 2254(d). *Rhoades v. Davis*, 852 F.3d 422, 434 (5th Cir. 2017) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (quoting, in turn, *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

A.     **Failure to Prepare Appeal**

In his second ground, Petitioner claims that his trial counsel was ineffective for not "prepar[ing] an appeal." (doc. 1 at 6.)  To prevail on a claim of ineffective assistance of counsel for failure to file a notice of appeal, a petitioner must show that counsel's failure to file a notice fell below an objective standard of reasonableness and that it prejudiced him.  *See Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000).  In *Flores-Ortega*, the Supreme Court held that an attorney's failure to file a notice of appeal requested by a defendant is *per se* ineffective assistance of counsel, even without a showing that the appeal would have had merit.  *Id.* at 477.  "For the same reason, a defendant who explicitly tells his attorney not to file an appeal cannot later complain that this counsel performed deficiently in failing to file a notice of appeal."  *Sanchez-Beltran v. United States*, Criminal Action No. L-07-932-1, 2009 WL 1754292, at *5 (S.D. Tex. June 19, 2009) (citing *Flores-Ortega*, 528 U.S. at 477).  A petitioner must demonstrate by a preponderance of the evidence that he requested an appeal to establish ineffective assistance for failing to file a requested notice of appeal.  *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007).

If the defendant has not told counsel whether he wants an appeal filed, the issue becomes whether counsel consulted with the defendant about an appeal.  *Flores-Ortega*, 528 U.S. at 478. In this context, "consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."  *Id.*  "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal."  *Id.* (citation omitted).

Where defense counsel has failed to consult with the defendant about an appeal, courts must inquire whether counsel was required to consult with his client.  *Id.* at 479-80. Counsel

deficiently performs when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for an appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480.  In making this determination, a court must consider "whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* However, "[i]n cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.*  Finally, even if a defendant shows deficient performance, he must show prejudice by "[demonstrating] that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484.

Here, in findings adopted by the Texas Court of Criminal Appeals, the habeas trial court explicitly found (1) that "[Petitioner] has not shown by a preponderance of the evidence that he ever communicated a desire to appeal to either his trial counsel or the court," and that (2) Petitioner's trial counsel "informed [Petitioner] of his appellate rights"; he signed the "Trial Court's Certification of his Right to Appeal," so he was "fully advised of his appellate rights." (doc. 18-2 at 59.)  These factual findings are presumed to be correct and can only be rebutted with clear and convincing evidence, which Petitioner does not offer.  *See*, *e.g.*, *Green v. Davis*, 414 F.Supp.3d 892, 916-17 (N.D. Tex. 2019) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007); *Rice v. Collins*, 546 U.S. 333, 338-39 (2006)).  He offers only the conclusory assertion that counsel failed to "prepare an appeal." (doc. 1 at 6.)  That is insufficient.  *See Branch v. Radar*, 596 F. App'x 273, 277 (5th Cir. 2015) (per curiam) (finding state habeas court's decision to deny

relief was not unreasonable where the petitioner waived his right to appeal and "provided no details, no elaboration, and no corroboration" to support his assertion that "'counsel failed to file an appeal as per petitioner's request'" and that "'counsel failed to notify him of the right to appeal'").

Given the unrebutted factual findings, this case fits within the situation described in *Flores-Ortega*: if the defendant's counsel consults with the defendant about his appellate rights, but the defendant "neither instructs counsel to file an appeal nor asks that an appeal not be taken", counsel acts reasonably. *Flores-Ortega*, 528 U.S. at 478 ("If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal."). This claim is meritless, and Petitioner has failed to show that the state court's rejection of it was unreasonable. It should be denied.

**B.**     **<u>Failure to Seek Acquittal</u>**

In his third ground, Petitioner claims that his trial counsel was ineffective for not requesting an acquittal because the victim could not identify him. (doc. 1 at 7.) In recommending that this claim be rejected, the habeas trial court made two findings that the Texas Court of Appeals adopted: (1) "[Petitioner knowingly and intelligently entered a plea of guilty to the offense and signed a judicial confession," and (2) "it was clear to all parties that the victim could not identify [Petitioner] and the State's case was based on other means of identification." (doc. 18-2 at 60.)

A plea of guilty waives several constitutional rights. *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). This waiver includes all claims of ineffective assistance of counsel "except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983).

Consequently, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'" *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *accord Bousley v. United States*, 523 U.S. 614, 618 (1998) (a guilty plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'") (quoting *Brady*, 397 U.S. at 748). A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fisher v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749). Courts considering challenges to guilty pleas "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993). A realistic understanding of the consequences of a guilty plea means that the defendant knows the "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 417 (5th Cir. 2002). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea. . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (en banc), *modified on other grounds*, 646

12

F.2d 902 (5th Cir. 1981). Inmates who challenge their guilty pleas on collateral review must overcome the presumption of regularity and "great evidentiary weight" accorded court records. *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *see also Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that "[o]fficial records are entitled to a presumption of regularity.").

Here, Petitioner fails to point to any evidence contesting the state court's finding that the guilty plea was knowing, voluntary, and intelligent.[5] To the contrary, the record evidence supports it. He signed a plea agreement that explained the charge against him, its punishment range, and his various rights. (doc. 18-2 at 8-11.) He provided statements and waivers, averring that he understood the nature of the accusation, the range of punishment, the consequences of a plea of guilty *or nolo contendere*, and the rights that he had. (*See id.* at 9-10.) He confirmed that his "plea and judicial confession are freely and voluntarily made, and not influenced by any consideration of fear, persuasion, or delusive hope of pardon or parole." (*See id.* at 10.) He also admitted and judicially confessed that he committed the charged offense as alleged in the indictment. (*See id.* at 6.) Petitioner has not overcome the presumption of regularity and great evidentiary weight accorded to his signed plea documents. *See, e.g.*, *Abreo*, 30 F.3d at 32.

Given the valid guilty plea, Petitioner waived his claim that his counsel was ineffective for not seeking an acquittal, as this claim does not relate to the voluntariness of the plea. *See Smith*,

---

[5] Although the state court only explicitly said that the plea was "knowingly and intelligently entered," it also implicitly found that the plea was voluntary given its disposition of Petitioner's claims. The deference to factual findings on federal habeas review extends to both implicit and explicit factual findings. *See, e.g.*, *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted).

711 F.2d at 682.

Alternatively, even if Petitioner did not waive this claim by pleading guilty, the state court also concluded that "it was clear to all parties that the victim could not identify [Petitioner] and the State's case was based on other means of identification [i.e. the video evidence]." (*See* doc. 18-2 at 60.) He does not offer any evidence or argument to rebut that conclusion. There was evidence against him, and the fact that the victim could not identify him was not dispositive. It therefore would have been futile to ask for an acquittal based on an argument that the victim could not identify Petitioner or that there was no evidence against him, and counsel is not required to make futile motions or argument.[6] *See*, *e.g.*, *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections.") (citing *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) (per curiam)). This claim is without merit, and Petitioner has failed to show that the state court's rejection of it was unreasonable. The claim should be denied.

## V.    SUPPRESSION OF EVIDENCE

In his fourth ground, Petitioner claims that the State knowingly suppressed a police report in which the victim allegedly claimed that she could not identify Petitioner as the perpetrator and a video of the incident. (doc. 1 at 7.)

The Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), held that suppression by the prosecution of evidence favorable to an accused after a request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith of the

---

[6] To the extent that Petitioner's fifth claim may be construed as a claim that his trial counsel was ineffective for not filing a motion for a new trial, it similarly fails. He has not shown counsel was deficient for not filing a motion for a new trial based on no evidence because there was evidence--the video tape. The guilty plea itself was also evidence sufficient to support the conviction. *See United States v. Broce*, 488 U.S. 563, 569 (1989). He fails to show that such a motion would have had any success, and counsel is not required to file frivolous motions. *Koch*, 907 F.2d at 527.

prosecution.  To establish a *Brady* violation, a petitioner must prove the following elements: (1) the evidence must be favorable to the accused, either because it is exculpatory or because it may be used as impeachment evidence; (2) the evidence must have been suppressed by the state; and (3) prejudice must have ensued.  *Banks v. Dretke*, 540 U.S. 668, 691 (2004).  Prejudice results when the suppressed evidence is "material."  *Banks*, 540 U.S. at 691 (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).  "The mere possibility that an item of undisclosed evidence might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."  *United States v. Agurs*, 427 U.S. 97, 109-10 (1978).  Instead, the evidence is material if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Miller v. Dretke*, 404 F.3d 908, 913-16 (5th Cir. 2005) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985); *see also Banks*, 540 U.S. at 698-99 (citing *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial.  *Bagley*, 473 U.S. at 682.

Here, in findings adopted by the Texas Court of Criminal Appeals, the habeas trial court found that the video tape evidence was not suppressed and that Petitioner viewed it prior to pleading guilty.  (*See* doc. 18-2 at 60.)  As for the police report, the habeas trial court found that it was "clear to all parties that the victim could not identify [Petitioner] and the State's case was based on other means of identification." (doc. 18-2 at 60.)  The state court appears to have concluded that any withholding of the police report was not prejudicial.

On federal habeas review, courts do not decide *de nevo* whether a state prisoner has sufficiently proven a *Brady* violation.  *See Dickson v. Quarterman*, 462 F.3d 470, 477 (5th Cir. 2006) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004); *Neal v. Puckett*, 286 F.3d 230,

236 (5th Cir. 2002) (en banc)). Instead, the question is whether the state court's *Brady* determination resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established federal law. *Busby v. Dretke*, 359 F.3d 708, 717 (5th Cir. 2004).

Here, Petitioner fails to meet that standard. He offers no argument or evidence to rebut the state court's crucial factual determinations that the video evidence was disclosed and that he was aware that the victim could not identify him. Based on those factual determinations, the state court's *Brady* determination was not unreasonable.

Further, these claims are also meritless because it is well established in the Fifth Circuit that "*Brady* focuses on the integrity of trials and does not reach pre-trial guilty pleas." *Mansfield v. Williams*, 30 F.4th 276, 280 (5th Cir. 2022) (citing *Matthew v. Johnson*, 201 F.3d 353, 361-62 (5th Cir. 2000; *United States v. Conroy*, 567 F.3d 174, 178 (5th Cir. 2009) (per curiam)). *Brady* is inapplicable to Petitioner under these facts. And even if these claims were cognizable under *Brady*, Petitioner waived them by pleading guilty. *See*, *e.g.*, *United States v. Conroy*, 567 F.3d 174, 178 (5th Cir. 2009) (finding *Brady* claim "foreclosed by our precedent holding that a guilty plea precludes the defendant from asserting a *Brady* violation") (citing *Matthew*, 201 F.3d at 353; *Orman v. Cain*, 228 F.3d 616 (5th Cir. 2000)).

Petitioner has failed to show the state court's rejection of his *Brady* claim was unreasonable, and the claim should be denied.

## VI.    RECOMMENDATION

The *Petition for a Writ of Habeas Corpus by a Person in State Custody*, received on April 22, 2020 (doc. 1) should be **DENIED** with prejudice.

16

**SO RECOMMENDED on April 7, 2023.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

17